J. G. BASKIN, *et al.,* v. State, *ex rel.* M. G. TRACY, *et al.*

155 So. 655.
Opinion Filed June 12, 1934.

*Wallace E. Sturgis,* for Plaintiffs in Error;

·*Frank R. Greene,* for Defendants in Error.

TERRELL, J.—In February, 1933, pursuant to Sections 1592 and 1593, Revised General Statutes of 1920, Sections 2440 and 2441, Compiled General Laws of 1927, petition was filed with the Board of County Commissioners of Marion County to change and establish that certain public road from a designated point on the Sharpe's Ferry Road in Township fifteen, Range twenty-three, of said county and to continue in a general northwesterly direction to Paradise on Silver River, 1.69 miles distance. The petition was duly subscribed by the requisite freeholders living in the vicinity and described the proposed road by fixed termini, courses, and distances.

In April, 1933, pursuant to Section 1593, Revised General Statutes of 1920, the Board of County Commissioners granted the petition and appointed three viewers to "view

and mark out the best route for the said proposed road" as petitioned for. In due course, the viewers made their report to the county commissioners in which they declined to approve the route described in the petition, but recommended a different route beginning at a designated point on the Ocala-Daytona Highway in the same Township and Range and continuing in a general southeasterly direction to Paradise, 1.02 miles distance. The object of the proposed road was to provide access for the public to Paradise, but the initial terminus of the route recommended by the viewers was about six miles by the nearest traveled highway from the terminus of the route described in the petition and using the distance from the initial termini to Paradise as the arms, a triangle of more than ninety degrees would be described.

In June, 1933, the Board of County Commissioners after full discussion of the two routes, by a vote of three to two agreed to accept and approve the report and recommendation of the viewers. The petitioners being aggrieved at this action did forthwith, on the consent of the State of Florida, petition the Circuit Court for alternative writ of mandamus directed to the Board of County Commissioners and the three viewers commanding them to convene and reject the report of the viewers approved by them and to order and require said viewers to view and mark out the best route for the road as prayed for in the petition. Alternative writ was granted. Demurrer to the return thereto was sustained and the instant writ of error was prosecuted to that order.

Plaintiff in error has argued a half score of questions here, but aside from that of the disqualification of the trial judge, the sole question we are called on to resolve is whether or not road viewers appointed under Section 1593, Revised

General Statutes of 1920, are authorized to inspect and recommend and the county commissioners to approve a route for a public road materially different from that de-. scribed in the petition for the location and establishment of said road. In sustaining the demurrer to the return to the alternative writ the court below answered this question in the negative.

As to the suggestion of disqualification of the trial judge, it is sufficient to say that it contains no ground of disqualification embraced in Section 2525, Revised General Statutes of 1920, Section 4152, Compiled General Laws of 1927, nor does it meet the requirements of Section 2674, Revised General Statutes of 1920, Section 4341, Compiled General Laws of 1927, to disqualify on the ground of prejudice. In fact, the suggestion of disqualification contains nothing more than an *ex cathedra* opinion of the judge as to the interpretation of the statute determining this cause, couched in somewhat picturesque diction. The suggestion of disqualification not meeting the requirements of the statute and being in other respects defective, the trial court might have properly ignored it.

Likewise we think the contention of plaintiff in error grounded on the non-joinder or misjoinder of parties is without foundation. It was not necessary to make all petitioners for the road parties to the mandamus proceeding. Generally the necessary parties to a mandamus petition are the relator, who asserts the right to have the act performed, and the respondent, upon whom the duty rests to perform it. This rule is not without its exceptions, but in a proceeding under our law to establish or change a public road the property rights of individuals are not extracted from them or adversely affected until steps are taken to condemn rights of way. This is done by suits for that pur-

pose in which the interested parties are required to be made parties and notified after failure to agree on reasonable compensation for the lands appropriated.

All other material assignments of error turn on the interpretation of Sections 1592 and 1593, Revised General Statutes of 1920, Sections 2440 and 2441, Compiled General Laws of 1927.

· Section 1592, Revised General Statutes of 1920, is as follows:

"No public road can be established, changed, or discontinued except on application to the county commissioners. Such application shall be made by petition duly signed by citizens, freeholders living in the vicinity of the road sought to be established or changed."

The import of this Act is to prescribe a rule for the initiation of proceedings to establish, change, or discontinue a public road. It excludes any other method than by petition to the county commissioners signed by citizens, freeholders living in the vicinity of the road sought to be established or changed. In order that this petition serve its purpose, it is essential that it describe with reasonable certainty the termini of the road sought to be established or changed, and define with a moderate degree of accuracy its general course. Failing in this, it is insufficient and does not clothe the county commissioners with jurisdiction to proceed.

Section 1593, Revised General Statutes of 1920, outlines the procedure to be followed to change or establish a new road after the petition is lodged with the county commissioners insofar as applicable to this case, it requires the county commissioners to order three disinterested freeholders in the county to view and mark out the best route for the proposed road. These freeholders or viewers are

required to serve without compensation and to take an oath to perform their duty faithfully. When the route is designated by them and report thereof made to the county commissioners, if accepted, it then becomes the duty of the county commissioners to make an order for the opening of the proposed road, after giving thirty days' notice thereof. Other provisions of the last named Act are not material to this case.

The order of the commissioners to three disinterested freeholders of the county to view and mark out the best route for the proposed road follows and must be predicated on the petition to the county commissioners signed by citizens, freeholders living in the vicinity of the road sought to be established or changed. The ultimate question here recurs on whether or not the viewers so designated are bound to mark and describe a road along the route indicated in the petition or may they in their discretion abandon that route and mark a wholly different one leading to the same or some other objective.

As hereinbefore suggested, the purpose of the road in question was to provide a means of access for the public to reach Paradise, a bathing resort, on Silver River. The route described in the petition and the route recommended by the report of the viewers served this purpose, but the route recommended by the viewers started from a different terminus, served a different community and was in no sense contemplated by the petition. If the route recommended by the viewers served the petitioners in the vicinity of the road petitioned for, it did so at great inconvenience. It apparently placed them seven miles instead of one by the nearest traveled road from Paradise. Taxpayers Elysian bound are entitled to the "short cuts" and the statute brought in question was cast in terms to guarantee them.

It is undoubtedly within the discretion of the county commissioners to accept or reject the report of the viewers appointed on the basis of the petition of the citizens, freeholders, describing the general course and termini of the road sought to be established, but we do not think they (the viewers) are authorized to mark and designate a road materially different from that indicated in the petition nor are the county commissioners authorized to approve and open a road not petitioned for.

This conclusion is supported by the fact that under Section 1592, Revised General Statutes of 1920, the matter of initiating the establishment, change or abandonment of a public road is limited to the citizen freeholders in the vicinity of the road sought to be established. The petition must designate the general location of the road to suit the designs of the community served by it and this purpose the viewers must keep in mind. They are not authorized to abandon the road sought to be established and locate one in a different place serving a different purpose even if it does reach the same objective. Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527; Crossley v. O'Brien, 24 Ind. 325; 29 C. J. 453, 457.

Plaintiff in error contends that Sections 1592 and 1593, Revised General Statutes of 1920, were impliedly repealed by Chapter 7738, Acts of 1917, Sections 1503 and 1504, Revised General Statutes of 1927, authorizing the county commissioners to exercise the right of eminent domain. In our view, the latter Act had no material effect whatever on the former except to modify the procedure by condemnation for acquiring rights of way for public roads.

It follows that the judgment below must be and is hereby affirmed.

Affirmed.

Davis, C. J., and Whitfield and Buford, J. J., concur.