CARROLL, Judge.
By this proceeding in eminent domain filed by the State of Florida, through its Department of Transportation, and Dade County, condemnation was sought of the right, title or interest of the Florida East Coast Railway Company in three and a third acres of land, consisting of a strip 30 feet wide and a certain distance in length, paralleling the track of the railroad company, in Dade County at a location between Miami and Homestead. The 30 foot strip in question is the outer portion of the right-of-way property of the railway com *482 pany lying east of the tracks. It also lies within State Road 5 (U.S. Highway No. 1) which is adjacent and runs parallel to the railroad right-of-way at that point.
In paragraph 3 of the complaint it was alleged the described property was owned by the State of Florida, subject to the “interest if any of Florida East Coast Railway Company.” The defendant railway company answered, denying the state’s allegation of ownership of the property, and averring it was owned by the railway company as a part of its established right-of-way.
Paragraph 7 of the complaint was as follows:
“As to those properties wherein the description includes the present road right of way, petitioner claims title to the present road right of way in absence of an easement of record, by construction, use and occupation of said right of way, continuously for a period of more than four (4) years.”
The defendant railway company moved to strike that paragraph of the complaint. The ground stated in the motion was that the plaintiffs could not acquire title to the property by adverse possession or by operation of law against the railway company, which as a “public service body” had owned, held and used the property as a part of its right-of-way for many years. Ruling thereon the trial court entered an order striking paragraph 7 from the complaint.
At the valuation trial which ensued the state attempted to present evidence of compliance with the prerequisites to the acquisition of title thereto through dedication, by reason of the property having been maintained, kept in repair or worked continuously and uninterruptedly for a period of four years by the state, as a public highway, as provided by § 337.31 Fla.Stat., F. S.A.[1] Included was a proffer by the state of a recorded map conforming to the requirements therefor as set out in subsection 2 of § 337.31.[2] Objections of the defendants thereto were sustained, and such evidence was rejected by the trial court. A jury verdict was rendered awarding the defendant railway company $170,060 compensation for the property. Judgment was entered thereon, and the state, through the Department of Transportation, appealed.
Appellant contends the trial court erred by striking paragraph 7 of the complaint, *483 which was the basis of the state’s claim of title to the property by dedication under § 337.31 Fla.Stat, F.S.A., and erred by depriving the state of the benefit of that statute by ruling inadmissible evidence presented or proffered to sustantiate its claim of title by dedication under said statute.
The railway company recognizes the right of the state (or the county) by eminent domain to take the 30 foot strip along the edge of its right-of-way, for highway purposes, and that the taking of that 30 foot strip would not directly interfere with the operation of the trains.[3]
However, the appellee railway company argues its title to the subject property cannot be so acquired by the state except upon payment of full (value) compensation therefor.
In support of that position the railway company argues that the road dedication statute (§ 337.31) cannot be applied against property which is the right-of-way of a railroad, and that the statute is unconstitutional, and therefore that the rulings of the trial court thus challenged by appellant were correct.
The appellee railway company cites authority for the proposition that in the absence of express or implied statutory authority a public body cannot acquire property of a railroad company by condemnation, if the taking of the property would interfere with the operation of the railroad on the railroad right-of-way, and would be necessary for its successful operation. That proposition is not applicable here. Between this 30 foot strip and the center of the tracks there remains 50 feet of railroad right-of-way. Not only is there no space between the railroad right-of-way and the state highway, but it is shown they overlap with the outer 30 foot strip lying within both rights-of-way. Therefore, there appears to be no question of the use or need for use of that 30 foot strip by the railway company for its existing track or tracks there, or for purposes such as a freight yard or spur tracks at that particular location. Moreover, as pointed out above, the railway company does not contend that the property in question is not subject to being taken by eminent domain for highway purposes, or that a loss thereof by eminent domain would interfere with its operation there. See footnote No. 3.
The appellee contends the state’s claim of title is by adverse possession, and that its property is not subject to be so taken. The state’s theory of ownership is not based on adverse possession. Title thus acquired by the state or a county or city by § 337.31, is not acquired by adverse possession, but by a dedication, conclusively presumed by law. See Lovey v. Escambia County, Fla.App.1962, 141 So.2d 761.
The railway company contends that it is a “public body,” such as a county or other agency of the state, and that property of one public body cannot be taken by another public body, citing Palm Beach County v. South Florida Conservancy District, 126 Fla. 170, 170 So. 630. That contention is without merit, and the cited case is not applicable here.
In the Conservancy District case two state agencies were involved. The agency charged with drainage duties determined it was necessary to increase the height of the levee along one side of the Hillsborough Canal in Palm Beach County, and that *484 when raised the levee should no longer be used as a roadway because to do so would adversely affect the use of the levee for its intended purposes. For more than four years prior thereto the county had maintained a road on the levee. When the work of increasing the height of the levee was undertaken, with consequent disruption of the road, the county caused the arrest of two of the officers of the drainage agency for interfering with the road, which the county claimed was a paramount use. At suit of the drainage agency the county was enjoined from interfering with it or its employees in the prosecution of the levee work. The county appealed and the Supreme Court affirmed.
Also in the Conservancy District case, where the claim of the county to dedication of the road on top of the levee, by virtue of § 337.31, came into conflict with the needs of the drainage agency for its exclusive use of the new or raised levee for its drainage purposes, the court held that the road dedication statute could not be operative in favor of the county against the conflicting interest of the drainage agency for necessary operational use of that property.
The present case is different. For one thing, the railway company is not a “public body” in the sense of an agency or political subdivision of the state, its status being that of a franchised public use company. Assuming, without so deciding, that property owned by it which was essential to its operations, could not be taken from it by the state by virtue of the road dedication statute or otherwise, the Conservancy District decision would not apply here since the property involved in this case is recognized by the railway company as being subject to be taken by the state for highway purposes and is not essential to its operation thereof.
We find no merit in the argument of the appellee railway company that § 337.31 Fla.Stat., F.S.A. in its present form should be held unconstitutional because it does not contain a saving clause granting to the landowner a further period, such as six months or a year, after dedication of a road to a public body has become complete and effective following four years’ maintenance thereof, within which to file a claim against the state authority assuming jurisdiction over the property for damages which may have accrued to the owner by virtue of the occupancy thereof by such governing authority. A saving clause of that nature was included in the dedication statute when originally enacted in 1935, but was omitted upon its re-enactment years later. We view as correct the position advanced by the appellant that while there may have been a place or need for such a saving clause in the statute when first enacted, since it could have had application to roads which then had been maintained by a governing authority for four years or more, the absence of such a clause in the statute presently is no impediment to its validity, because by the presence of the statute on the books, during the period of four years or more of state, county or city maintenance of a road which could bring about its dedication, an owner necessarily must be considered to have notice therof and to have had opportunity in that interval to make a claim for any damages to which it may have become entitled, as a result of the use of the property by the governing body during that period. No basis in law for holding § 337.31 invalid was shown. See Bridgehead Land Co. for Use and Benefit of River’s Edge v. Hale, 145 Fla. 389, 199 So. 361; State Road Department v. Lewis, Fla.1964, 170 So.2d 817; Seaside Properties, Inc. v. State Road Department, Fla.App.1966, 190 So.2d 391.
For the reasons assigned we hold it was error to strike from the complaint the allegation of ownership of the state by dedication based on four years’ maintenance of the property in question as a highway or road, and to preclude it from showing evidence to sustain the claim of title thereto by such dedication under § 337.31, Fla.Stat., F.S.A. If the state had *485 been permitted to, and had succeeded in making- a showing of facts upon which, under the provisions of the statute, dedication of the subject property thus had been effected, the state thereby would have become entitled to judgment in the condem-national action without payment of compensation.
Accordingly, the judgment is reversed and the cause is remanded to the circuit court for further proceedings for determi-'fiátiób'of'the factual issue or issues relating to the claim of the state to title through dedication under said statute, upon which, if the court’s decision on such issues is in favor of the defendant railway company the judgment shall be reinstated, but if the claim of the state to title through dedication under the statute is found to be sustained by the evidence, judgment shall be re-entered in favor of the plaintiff, revised to eliminate the compensation award, and without damages other than for defendants’ attorney fees and costs. If upon such issues it shall be found by the trial court that title in the state, by dedication under the statute, has been established for part of the 30 foot strip but not as to some portion or portions thereof, the cause should again be submitted to a jury for determination of the amount to be awarded to the defendant railroad company for the part or parts of the subject property so found not to- have been acquired by the state by dedication by virtue of the statute, and judgment then entered with modifications as outlined above.
Reversed and remanded with directions.

. Section 337.31, entitled: “Hoads presumed to be dedicated.-”, has two subsections, the first is as follows:
“Whenever any road constructed by any of the several counties or incorporated municipalities or by the department shall have been maintained, kept in repair or worked continuously and uninterruptedly for a period of four years by any county, municipality, or by the department, either separately or jointly, such road shall be deemed to be dedicated to the public to the extent in width which has been actually worked for the period aforesaid, whether the same has ever been formally established as a public highway or not. Such dedication shall be conclusively presumed to vest in the particular county in which the road is located, if it be a county road, or in the particular municipality, if it be a municipal street or road, or in the state, if it be a road in the state highway system or state park road system, all right, title, easement and appurtenances therein and thereto, whether there be any record of conveyance, dedication or appropriation to the public use or not.”

. Subsection 2 of § 337.31 provides:
“The filing of a map in the office of the clerk of the circuit court of the county in which such roads are located showing such lands and reciting thereon that they have vested in either the state, a county or municipality pursuant to the provisions of this law or by other means of acquisition, duly certified to by the director if the road involved is a road in the state highway system or state park road system, or by the chairman and clerk of the commissioners of the county if the road involved is a county road, or by the mayor and clerk of the municipality if the road involved is a municipal road or street, shall be taken as prima facie evidence of the ownership of such lands either by the state or by the county or municipality as the case may be.”

. This appears from the following statement in the brief of the appellee, viz: “The law says that where two condemning authorities come into conflict as here; that is, where one public body seeks to condemn the property of another public body, there is an exception to the prior use doctrines which permits the taking by eminent domain if the new use is compatible with and will not destroy or injure the existing use. See City of Dania v. Central & So. Florida Flood Control District (2d D.C.1961), 134 So.2d 848. This exception is applicable here and permits the State to take by eminent domain the strip of land involved because it will not directly interfere with the operation of the trains.”